IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

LINDA GIBSON                                                                    PLAINTIFF

V.                        Case No. 4:25-CV-00729-DPM-BBM

FRANK BISIGNANO, Commissioner,
Social Security Administration                                      DEFENDANT

## RECOMMENDED DISPOSITION

This Recommended Disposition ("Recommendation") has been sent to United States District Judge D.P. Marshall Jr. Either party may file written objections to this Recommendation. Those objections should be specific and should include the factual or legal basis for the objection. To be considered, objections must be received in the office of the Court Clerk within 14 days. If no objections are filed, Judge Marshall can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

## I.    INTRODUCTION

Linda Gibson applied for Title II disability insurance benefits ("DIB") and Title XVI supplemental security income ("SSI") on July 15, 2021, alleging disability beginning on September 1, 2012. (Tr. at 17, 256). Her claims were denied both initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 17). Gibson was 45 years old when the hearing was held on February 8, 2024.[1] (Tr.

---

[1] A telephone hearing held on July 20, 2023, was discontinued and rescheduled due to background noise. (Tr. at 68–72).

at 37, 43). Thereafter, on May 8, 2024, the ALJ concluded that Gibson was not disabled. (Tr. at 17–29). Gibson requested review by the Appeals Council, which was denied on May 19, 2025. (Tr. at 1–2). The ALJ's decision now stands as the final decision of the Commissioner, and Gibson requests judicial review. For the reasons set forth below, the Court recommends that the decision of the Commissioner be affirmed.

## II.    THE COMMISSIONER'S DECISION

At Step One of the sequential five-step analysis,[2] the ALJ found that Gibson had not engaged in substantial gainful activity since her alleged disability onset date of September 1, 2012. (Tr. at 20). At Step Two, the ALJ identified the following severe impairments: lumbar degenerative changes; osteoarthritis, status post-left hip posterior wall acetabulum fracture; right thumb degenerative changes status post-ligament reconstruction; left knee degenerative changes; feet degenerative changes; peripheral neuropathy; anxiety disorder; adjustment disorder with depressed mood; post-traumatic stress disorder; and cannabis use disorder. *Id*.

After finding at Step Three that none of Gibson's impairments or combination of impairments met or medically equaled a listed impairment, the ALJ determined that Gibson had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. at 23). More specifically, the ALJ found that Gibson could lift and carry 20 pounds

---

[2] Using a five-step sequence, the ALJ determines: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)–(g), 416.920(a)–(g).

occasionally and 10 pounds frequently; sit for six hours and stand or walk for six hours in an eight-hour workday; occasionally climb ramps or stairs but never climb ladders, scaffolds, or ropes; occasionally balance, stoop, kneel, crouch, or crawl; frequently use her upper extremities to reach, handle, finger, or feel; never be exposed to hazards such as unprotected heights or dangerous moving machinery; perform simple, repetitive work; and make simple work-related decisions. *Id*.

After hearing testimony from a Vocational Expert, the ALJ decided that Gibson was able to perform jobs that exist in significant numbers in the national economy, including cashier, marker, and counter attendant. (Tr. at 28). Consequently, the ALJ concluded that Gibson was not disabled. *Id*.

## III. DISCUSSION

### A. Standard of Review

"In reviewing the ALJ's decision," the Court "examine[s] whether it is supported by substantial evidence on the record as a whole and whether the ALJ made any legal errors." *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). "Substantial evidence is that which a 'reasonable mind might accept as adequate to support a conclusion,' whereas substantial evidence on the record as a whole entails 'a more scrutinizing analysis.'" *Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted). "Our review 'is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision . . . . [W]e also take into account whatever in the record fairly detracts from that decision.'" *Gann v. Berryhill*, 864 F.3d 947, 950–51 (8th Cir. 2017) (citation omitted). "Reversal is not warranted, however,

3

'merely because substantial evidence would have supported an opposite decision.'" *Reed*, 399 F.3d at 920 (citation omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . is 'more than a mere scintilla.'" *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*. (citation omitted).

## B.      Gibson's Arguments on Appeal

Gibson makes two arguments on appeal: (1) that the RFC is not supported by substantial evidence because the ALJ improperly relied on his lay opinion, (Doc. 13 at 10–14), and (2) that the ALJ erred in evaluating the persuasiveness of medical opinions provided by state agency consultants, *id*. at 14–19. Neither argument has merit, and the Commissioner's decision should be affirmed.

### 1.      The ALJ's RFC assessment is supported by substantial medical evidence.

Gibson first argues that the RFC is not supported by substantial evidence because the ALJ relied on his own interpretation of the medical evidence to assess Gibson's functional limitations instead of requesting a medical professional's opinion. (Doc. 13 at 12). More specifically, Gibson notes that both state agency medical consultants, Dr. Clarence Ballard and Dr. William Harrison, who reviewed Gibson's medical records at the

initial and reconsideration stage, determined that there was insufficient evidence for a full medical evaluation of Gibson's DIB claim.[3] *Id*. at 11–12. Gibson contends this left the ALJ without a medical opinion on Gibson's physical impairments for her DIB claim. *Id*. Gibson argues that because the ALJ was not qualified to interpret the medical evidence— including x-rays, a CT scan, and an MRI—the ALJ had a duty to obtain a medical opinion from a qualified professional to assess Gibson's physical functioning. *Id*. at 13–14.

A disability claimant has the burden to establish her RFC. *See Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004), and *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). However, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citing *Myers v. Colvin*, 721 F.3d 521, 526–27 (8th Cir. 2013); *Perks v. Astrue*, 687 F.3d 1086, 1092–93 (8th Cir. 2012)). Rather, the RFC should be "based on all of the relevant evidence, including the medical records, observations of treating physicians and

---

[3] To be entitled to DIB, Gibson had to establish she was disabled prior to the expiration of her insured status. *See* 20 C.F.R. §§ 404.101, 404.131. The ALJ found that Gibson met the insured status requirements of the Social Security Act through September 30, 2017. (Tr. at 20). Thus, the relevant period for her DIB claim was her alleged onset date through her last date insured—September 1, 2012, through September 30, 2017. For purposes of the SSI claim, Gibson had to demonstrate that she was disabled during the time her application was pending, which was July 15, 2021, through the date of the ALJ's decision. *See* 20 C.F.R. §§ 416.330, 416.335.

others, and an individual's own description of [her] limitations." *Id.* (quoting *Myers*, 721 F.3d at 527); *see also Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir. 2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved *only* by medical evidence, we disagree.")). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Cox v. Astrue*, 496 F.3d 614, 619–20 (8th Cir. 2007)); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

In this case, the ALJ disagreed with the state agency medical consultants and found the medical evidence in the record sufficient to evaluate Gibson's DIB claim. This Court finds no error in that decision.

Although an ALJ has a basic duty to develop a reasonably complete record, *Clark v. Shalala*, 28 F.3d 828, 830–31 (8th Cir. 1994), it is only when the medical records fail to provide sufficient evidence for assessing disability that an ALJ is required to recontact a treating or consulting physician or order further testing. *Martise v. Astrue*, 641 F.3d 909, 926–27 (8th Cir. 2011) (quoting *Johnson v. Astrue*, 627 F.3d 316, 320 (8th Cir. 2010)); *see also Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020) (stating that an ALJ is not required to obtain a functional description from medical professionals "that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality"). Where there is a lack of evidence in the record regarding functional limitations or where the ALJ is presented with conflicting medical opinions and fails to articulate his evaluation

6

of those opinions, remand may be appropriate for further development. *See Noerper*, 964 F.3d at 747 (citing *Combs*, 878 F.3d at 646).

There was sufficient evidence of Gibson's functional limitations during the period relevant to her DIB claim available for the ALJ to assess adequately her RFC. Specifically, the ALJ cited to Gibson's medical treatment records, which were "primarily limited to conservative measures," including follow-up care and medication management. (Tr. at 24). Gibson was diagnosed with a left-hip fracture after a fall in 2016, but it was treated non-operatively and with physical therapy. (Tr. at 24, 675–79). At a follow-up appointment in August 2016, Gibson stated that she was "much improved." (Tr. at 952). A June 2017 lumbar MRI revealed "[m]ild facet degenerative changes at multiple levels and tiny neural foraminal cyst on the right at L5-S1." (Tr. at 666). There was no significant disc herniation or neural foraminal narrowing in the lumbar spine. *Id*. Moreover, the ALJ considered Gibson's own description of her limitations, which included pain in her back, knees, feet, and hands; numbness and tingling in her lower extremity; the inability to stand longer than 20 minutes; the inability to walk longer than 10 minutes; the inability to sit longer than 25 minutes; and difficulty lifting heavy items. (Tr. at 24).

Gibson acknowledged the ability to perform a range of activities of daily living, including shopping in stores, attending to her personal care, preparing simple meals, caring for her children,[4] taking out the trash, managing money, and watching television. *Id*. She

---

[4] Gibson testified that she lives with two of her children, ages nine and ten, and her husband. (Tr. at 43). Both children are disabled (one son has cerebral palsy), and both children receive SSI disability benefits. (Tr. at 47).

stated that she took breaks every 15 minutes in completing certain tasks and had help from a personal aide with cooking and completing household chores. *Id*. The ALJ found that Gibson's ability to perform these activities was inconsistent with the degree of limitation she alleged. *Id*.

In sum, there is no requirement that an ALJ have a specific medical opinion to establish a claimant's RFC. *Schmitt*, 27 F.4th at 1360 ("there is no requirement that an RFC finding be supported by a specific medical opinion.") (quoting *Hensley*, 829 F.3d at 931–32). An ALJ may request more information or request a medical opinion where there is a dearth of evidence in the record to establish the claimant's functional limitations, if necessary. In this case, however, for the period relevant to Gibson's DIB claim, there was sufficient evidence—treatment records, objective medical testing, and Gibson's own description of her abilities—for the ALJ to assess Gibson's functional limitations.

### 2. The ALJ properly evaluated the persuasiveness of the opinions of the state agency medical consultants.

Gibson next argues that the ALJ erred in evaluating the persuasiveness of the opinions of the state agency medical consultants. Specifically, Gibson argues that the ALJ (1) failed to evaluate the supportability factor when considering the opinions of Dr. Ballard and Dr. Harrison concerning Gibson's physical limitations, (Doc. 13 at 17–18), and (2) failed to evaluate both the supportability and consistency factors when considering the opinions of Dr. Rachel Morrisey and Dr. Maxine Ruddock concerning Gibson's mental limitations, *id*. at 18–19.

On January 28, 2017, the Social Security Administration promulgated new

regulations governing how ALJs assess medical opinion evidence. The new rules provide that an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." *See* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017). Instead, ALJs are required to analyze whether opinion evidence is persuasive, based on: (1) supportability; (2) consistency with the evidence; (3) relationship with the claimant [which includes; (i) length of treatment relationship; (ii) frequency of examinations; (iii) purpose of the treatment relationship; (iv) extent of the treatment relationship; and (v) examining relationship]; (4) provider specialization; and (5) any other important factors. *See* 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An opinion is "more persuasive if it is supported by explanation and relevant objective medical evidence, and it is consistent with other evidence in record." *Norwood v. Kijakazi*, No. 21-3560, 2022 WL 1740785, at *1 (8th Cir. May 31, 2022) (unpublished per curiam) (citing 20 C.F.R. §§ 404.1520c(c), 416.920c(c)). An ALJ must give good reasons for his findings about an opinion's persuasiveness. *Phillips v. Saul*, No 1:19-CV-00034-BD, 2020 WL 3451519, at *2 (E.D. Ark. June 24, 2020) (first citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (January 18, 2017); then citing Articulation Requirements for Medical Opinions and Prior Administrative Medical Findings – Claims filed on or after March 27, 2017, SSA POMS DI 24503.030).

Turning first to the consultants who provided medical opinions regarding Gibson's physical limitations, Dr. Ballard and Dr. Harrison both concluded that Gibson was able to perform work at a light exertional level. (Tr. at 77, 83, 92, 99). The ALJ found the opinions of Dr. Ballard and Dr. Harrison partially persuasive. (Tr. at 25). The ALJ found their

opinions persuasive "insofar as they concluded that the claimant retains the ability to perform the lifting/carrying, sitting, and standing/walking required of light work." *Id*. The ALJ observed that Gibson's medical providers indicated a loss of range of motion in her hip and back and some extremity strength deficits but that Gibson "did not require an assistive device and did not exhibit extremity sensation abnormalities." *Id*. The ALJ noted Gibson's treatment was "limited to conservative measures." *Id*. The ALJ also found, however, that neither Dr. Ballard nor Dr. Harrison "adequately consider[ed] the impact of [Gibson's] pain on her ability to engage in postural activities or use her upper extremities." *Id*. The ALJ concluded that the overall record supported a more restrictive RFC to account for Gibson's limitations. *Id*. Therefore, in assessing the persuasiveness of the opinions of Dr. Ballard and Dr. Harrison, the ALJ found supportability *lacking*, and the ALJ outlined a more restrictive RFC.

The ALJ also found unpersuasive the shared opinion of psychological consultants Dr. Ruddock (at the initial determination) and Dr. Morrisey (at reconsideration) that Gibson's mental impairments caused no more than mild work-related restrictions. (Tr. at 27). The ALJ stated that, "[t]hey identified mild restriction in the claimant's ability to maintain social functioning and sustaining concentration/persistence/pace, as well as no restriction in her ability to understand/remember/apply information or adapt/manage herself." *Id*. The ALJ noted that the overall record was more consistent with and supportive of moderate limitations in concentration and persistence. *Id*. Specifically, the ALJ noted that Gibson had exhibited deficiencies in concentration and memory, as well as difficulty with simple math calculations, during an examination with Dr. Kenneth Hobby in July

10

2014. (Tr. at 26, 475–84). The ALJ found the opinions of Dr. Ruddock and Dr. Morrisey lacked both supportability and consistency, and the ALJ assigned more restrictive limitations than either medical professional suggested. (Tr. at 27).

In sum, the ALJ sufficiently evaluated the persuasiveness of the opinions of the state agency medical consultants, both as to Gibson's physical limitations and her psychological limitations. The ALJ noted what was missing from the consultants' assessments based on other information in the record and assigned a more restrictive RFC. Although the ALJ's persuasiveness evaluation was succinct, an "ALJ's brevity is not reversible error." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021). "An ALJ's reasoning need only be clear enough to allow for appropriate judicial review." *Id*. (quoting *Sloan v. Saul*, 933 F.3d 946, 951 (8th Cir. 2019)). Moreover, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Id*. Here, each state agency medical consultant concluded Gibson was *less limited* than the RFC assessed by the ALJ, and Gibson fails to identify any error by the ALJ in assessing the persuasiveness of these medical opinions that would have changed the outcome of her case.

## IV.   CONCLUSION

For the reasons stated above, the Court recommends that the Commissioner's decision be affirmed. Substantial evidence supports the Commissioner's decision that Gibson was not disabled.

IT IS THEREFORE RECOMMENDED THAT:

1.    The Commissioner's decision be AFFIRMED.

2.    Judgment be entered for the Defendant.

DATED this 18th day of May, 2026.

_____
UNITED STATES MAGISTRATE JUDGE

12